DOBSON v MAKI

ROGERS v MAKI

UNITED STATES FIDELITY AND GUARANTY COMPANY v
DesROCHERS

Docket Nos. 110738, 110739, 116468. Submitted March 7, 1990, at
    Grand Rapids. Decided June 18, 1990. Leave to appeal applied
    for.

In March, 1987, Todd R. Maki, a minor, attended a party at
    which the partygoers were charged an admission fee and alleg-
    edly consumed beer from kegs that had been provided for the
    partygoers. Maki left the party, taking Heather Ann Lentz and
    Debra Rogers with him. After leaving the party, the vehicle
    Maki was driving collided with a tree, and Lentz was killed and
    Rogers suffered serious injuries. Christine Dobson, individually
    and as personal representative of the estate of Heather Ann
    Lentz, and Bertha Rogers, individually and as next friend of
    Debra Rogers, and Shirley Rogers brought in Baraga Circuit
    Court actions for damages against, among others, Maki, the
    organizers of the party including Paul DesRochers, Jr., and, in
    a dramshop count, Bill's Corner Store, Inc., which had sold the
    kegs of beer to the organizers of the party. Bill's Corner Store
    moved for summary disposition. The trial court, Stephen D.
    Condon, J., granted the motion in part, but refused to grant
    summary disposition as to that portion of the count relating to
    the claim that Bill's Corner Store was liable under the dram-
    shop act by reason of its sale of beer to John Veker, one of the
    alleged organizers of the party, who was a minor and who
    allegedly had made the beer available to Maki. Bill's Corner
    store appealed by leave granted.

United States Fidelity and Guaranty Company, issuer of a home-
    owner's policy to Paul DesRochers, Sr., father of defendant
    Paul DesRochers, Jr., brought a declaratory judgment action to
    determine whether it was required to defend Paul DesRochers,

REFERENCES

Am Jur 2d, Insurance § 704; Intoxicating Liquors §§ 554-556, 561,
    582, 587, 594.

Civil Damage Act: liability of one who furnishes liquor to another
    for consumption by third parties, for ijury caused by consumer.
    64 ALR3d 922.

Jr. USF&G named plaintiffs in the underlying actions, as well as the younger DesRochers and the other defendants in the underlying actions, as defendants in its declaratory judgment action. The younger DesRochers did not answer and USF&G sought a default judgment against him. The trial court refused to enter a default judgment because of the interests of other interested parties who had been named as defendants in the declaratory judgment action. The trial court also denied USF&G's motion for summary disposition, which had been based on the claim that the pleadings clearly established that the younger DesRochers was not domiciled in the house of his father, the named insured. The trial court thereafter determined as a matter of fact that the younger DesRochers was domiciled in his father's house. USF&G appealed.

The Court of Appeals *held:*

1. The 1986 amendment of the dramshop act clearly eliminated liability under the act where the claim was based on an indirect furnishing of intoxicants to a minor. Here plaintiffs have pled only an indirect furnishing of intoxicants to the minor who allegedly caused the injuries as a result of being intoxicated. The fact that there was a direct sale to a minor who did not cause the accident but who in turn had furnished the intoxicants to the minor causing the injuries does not satisfy the dramshop act's requirement that the injury be caused by the minor to whom the dramshop owner furnished the intoxicants. The trial court should have granted summary disposition in favor of Bill's Corner Store on all dramshop counts.

2. The trial court properly refused to grant a default judgment against Paul DesRochers, Jr., in the declaratory judgment action, since such a default judgment would adversely affect the other named defendants in the declaratory judgment action.

3. Since it could not be said that the nonmoving parties would be unable to establish that the younger DesRochers was domiciled in his father's house, the trial court properly denied USF&G's motion for summary disposition.

4. It cannot be said that the evidence so clearly preponderates in the opposite direction as to warrant overturning the trial court's factual determination that the younger DesRochers was domiciled in his father's home on the date of the events leading to the underlying action.

Reversed in part; affirmed in part.

1. INTOXICATING LIQUORS — DRAMSHOP ACT — MINORS — INDIRECT SALES.

The 1986 amendment of the dramshop act eliminated liability

under the act of a dramshop owner for indirect sales of alcoholic liquors to a minor; a sale to a minor other than the minor causing the injuries upon which a dramshop action is brought is an indirect sale and is not subject to dramshop act liability under the provision of the dramshop act relating to sales to minors (MCL 436.22[3]; MSA 18.993[3]).

2. JUDGMENT — DEFAULT — PARTIES.

A trial court may properly refuse to enter a default judgment where the complexities of the issues require presentment of full proofs in order to do justice to the rights and liabilities of all of the parties, appearing or not.

3. INSURANCE — WORDS AND PHRASES — DOMICILE — RESIDENCE.

Among the factors to be considered in determining whether a claimant is "domiciled in the same household" as an insured are: (1) the subjective or declared intent of the claimant to remain, either permanently or for an indefinite time, in the household, (2) the formality of the relationship between the claimant and the members of the household, (3) whether the claimant lives in the same house, within the same curtilage, or upon the same premises as the insured, (4) whether the claimant has another place of lodging, (5) whether the claimant continues to use the insured's address as his mailing address, on his driver's license, and on other documents, (6) whether the claimant maintains some possessions with the insured, (7) whether a room is maintained for the claimant at the insured's home, and (8) whether the claimant is dependent upon the insured for support.

4. DOMICILE — QUESTIONS OF FACT.

The determination of domicile is a question of fact for trial court resolution; all relevant factors must be considered in making such determination and the Court of Appeals will not reverse a trial court's determination in this regard where the evidence does not clearly preponderate in the opposite direction.

*Goodman & Makinen* (by *Michael E. Makinen*), for Christine Dobson.

*Wisti & Jaaskelainen, P.C.* (by *Mikael G. Hahner*), for Bertha and Shirley Rogers.

*Weber, Swanson & Dettmann* (by *Keith E. Swanson*), for United States Fidelity and Guaranty Company.

*Garfield W. Hood,* for Bill's Corner Store, Inc.

Before: SHEPHERD, P.J., and SULLIVAN and NEFF, JJ.

SHEPHERD, P.J. In these consolidated appeals, Bill's Corner Store, a defendant in the principal action, appeals by leave of this Court from the trial court's decision denying its motion for summary disposition as to claims for damages arising out of the indirect sale of alcohol to a minor by the plaintiffs in the principal action. United States Fidelity and Guaranty Company (USF&G), plaintiff in its subsidiary declaratory judgment action, appeals as of right from the trial court's order denying its motion for summary disposition and order of judgment finding that USF&G has a duty to defend Paul DesRochers, Jr., a defendant in the principal action. USF&G additionally appeals from the trial court's denial of a default judgment against Paul DesRochers, Jr.

The principal action arose as the result of an automobile accident. In March of 1987, Todd Reuben Maki, Heather Ann Lentz and Debra Rogers left a party that they had been attending. Maki, who had allegedly consumed alcohol at the party, was the driver of the vehicle. After leaving the party the vehicle collided into a tree. Heather Lentz was killed and Debra Rogers suffered serious injuries.

An admission fee was charged to enter the party which the three young people had attended. In return, kegs of beer were provided to the party-goers. Paul DesRochers, Jr., was allegedly one of several persons who had arranged the party. Bill's Corner Store is the establishment from which the kegs of beer were allegedly purchased by the party organizers. USF&G is the insurance company which

carries homeowner's insurance on Paul DesRochers, Sr., father of Paul DesRochers, Jr.

Bill's Corner Store argues that the trial court erred in denying its motion to strike or in the alternative its motion for summary disposition as to paragraph 5 of Count 5 of the principal plaintiffs' complaints. We agree. Paragraphs 4 and 5 of Count 5 of the principal plaintiffs' complaints allege:

> 4. That in violation of the prohibitions as set forth in MCLA 436.22 [MSA 18.993], Defendant, Bill's Corner Store, Inc., by and through their agents, servants and employees, on March 14, 1987, sold, furnished, or gave alcoholic beverages to a minor, to-wit: Defendant, Todd Reuben Maki, or in the alternative, to persons who were acting as the implicit agents of Defendant, Todd Reuben Maki, when Defendant licensee knew, or in the exercise of reasonable care, should have known that said individuals were acting as agents or for Defendant, Todd Reuben Maki, in that repeated purchases of alcoholic beverages were made and that Defendant, Todd Reuben Maki, was present during the purchase of said alcoholic beverages.
> 5. That Defendant, Bill's Corner Store, Inc., further violated the prohibitions as set forth in MCLA 436.22, in that said Defendant, by and through its agents, servants and employees, sold alcoholic beverages to a minor, to-wit: Defendant, John Veker, and that such sale was a proximate cause of the damages in this Complaint set forth, in that such alcohol sold by Defendant Bill's Corner Store, Inc., to Defendant, John Veker, was consumed and made available to other minors, including Defendant, Todd Reuben Maki.

The trial court granted the motion for summary disposition with respect to the claim in paragraph 4 of Count 5 on the basis that it was a claim for the indirect sale of alcoholic beverages to a minor

which the trial court held is not a permissible claim under the dramshop act. The trial court however found paragraph 5 of Count 5 to be a proper claim.

In 1986 subsection (3) of the dramshop act, MCL 436.22(3); MSA 18.993(3), was amended. Prior to its amendment that subsection provided:

> A retail licensee shall not directly or indirectly, individually or by a clerk, agent, or servant sell, furnish, give, or deliver alcoholic liquor to a minor except as provided in this act, nor to a person who is visibly intoxicated. A retail licensee who violates this subdivision shall pay all actual damages that may be awarded to a person for injuries inflicted upon the person, the person's property or means of support, or otherwise resulting from the selling, furnishing, giving, or delivering of alcoholic liquor to the person.

Following its 1986 amendment by 1986 PA 176, § 1, subsection (3) states:

> A retail licensee shall not directly, individually, or by a clerk, agent, or servant sell, furnish, or give alcoholic liquor to a minor except as otherwise provided in this act, nor directly or indirectly, individually or by a clerk, agent, or servant sell, furnish, or give alcoholic liquor to a person who is visibly intoxicated.

There is no dispute that the amended version of the dramshop act is applicable to this case. In the amended version the Legislature clearly deleted the provision for indirect sales to minors, while leaving intact liability for indirect sales to visibly intoxicated persons. By the clear wording of the statute we can conclude that the Legislature intended to preclude dramshop liability for the indirect sale of intoxicants to minors.

The trial court erred when it failed to grant appellant summary disposition as to paragraph 5 of Count 5 of the principal plaintiffs' complaints. That allegation, in our opinion, is nothing more than an ambiguous allegation of liability based upon the indirect sale of alcohol to a minor. We further find that the allegation in paragraph 5 of Count 5 is not permissible pursuant to MCL 436.22(4); MSA 18.993(4). That subsection of the dramshop act states:

Except as otherwise provided in this section, an individual who suffers damage or is personally *injured by a minor* or visibly intoxicated person *by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor* or visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. [Emphasis added.]

It is our opinion that MCL 436.22(4); MSA 18.993(4) does not contemplate liability where the minor inflicting the injury and the minor who purchased the alcohol were not the same person. If we were to read this section as allowing liability where the sale of alcohol to one minor was the proximate cause of the injury caused by another minor who had ingested the alcohol, we would invalidate the Legislature's explicit withdrawal of indirect liability for the sale of alcohol to minors.

We conclude that appellant was entitled to judgment as a matter of law on the allegation contained in paragraph 5 of Count 5 of the principal

plaintiffs' complaints. MCR 2.116(C)(8). The trial court's decision denying the motion is reversed.

We next address the claims of USF&G which pertain to the action brought by it for declaratory relief. USF&G sought to have the trial court find that it had no duty to defend Paul DesRochers, Jr., on the basis that he was not covered by his father's homeowner's insurance policy. USF&G maintains that the younger DesRochers was not domiciled at his father's home. In the declaratory relief action all of the parties to the consolidated personal injury cases were named as defendants.

USF&G first asserts that the trial court erred in failing to grant a default judgment against Paul DesRochers, Jr. It is not disputed that DesRochers failed to file an answer to the complaint and in fact was not contesting USF&G's claim that he was not domiciled with his father at the time of the accident. We find no error in the trial court's decision. A trial court may properly refuse to enter a default judgment where the complexities of the issues require presentment of full proofs in order to do justice to the rights and liabilities of all of the parties, appearing or not. *Rendle v Weimeyer,* 374 Mich 30, 35; 131 NW2d 45 (1964). In the present case, several other defendants remained in the declaratory judgment action, and to have granted relief to USF&G would have denied them the opportunity to put on any proofs as to the issue of the younger DesRochers' domicile.

USF&G next argues that the trial court erred in denying its motion for summary disposition made pursuant to MCR 2.116(C)(10). Summary disposition under MCR 2.116(C)(10) is appropriate only if the court is satisfied that it is impossible for the nonmoving party's claim to be supported at trial because of a deficiency which cannot be overcome.

*Young v Oakland General Hospital,* 175 Mich App 132, 137; 437 NW2d 321 (1989).

The Michigan Supreme Court in *Workman v DAIIE,* 404 Mich 477, 496-497; 274 NW2d 373 (1979), articulated four factors which are relevant to a determination whether a person is domiciled in the same household as the insured: (1) the subjective or declared intent of the person to remain indefinitely or permanently, (2) the formality or informality of the relationship between the person and the insured, (3) whether the place where the person lives is in the same house of the insured, and (4) the existence of another place of lodging for the person. This Court has found several other factors to be relevant in determining the domicile of an individual, such as: (1) the person's mailing address, (2) whether the person maintains possessions at the insured's home, (3) whether the insured's address appears on the person's driver's license and other documents, (4) whether a bedroom is maintained for the person at the insured's home, and (5) whether the party is dependent upon the insured for financial support or assistance. *Dairyland Ins Co v Auto Owners Ins Co,* 123 Mich App 675, 682; 333 NW2d 322 (1983).

The trial court was presented with affidavits from both DesRochers, Sr., and DesRochers, Jr. Both averred that DesRochers, Jr., was not a resident of his father's household at the time the accident occurred. However, information was also presented that DesRochers, Jr., had been receiving mail at his father's home at the time of the accident and that he had slept at his father's home during the time in question. Given these facts, we find no error in the trial court's determination that a genuine issue of material fact existed at to DesRochers' domicile.

USF&G further contends that the trial court

erred in finding that DesRochers was domiciled in his father's home at the time of the accident. The determination of domicile is a question of fact for the trial court's resolution. *Dairyland Ins, supra,* p 684. This Court will not reverse the trial court's decision unless the evidence clearly preponderates in the opposite direction. *Id.*

DesRochers was twenty-one years old at the time of the automobile accident involved in this case. The accident occurred on March 14, 1987. DesRochers' mother and father are divorced, but both reside in the Baraga County area. In the late summer of 1984, DesRochers lived and worked with his father for approximately one month. When this arrangement did not work out, Des-Rochers went to live in a trailer located on his mother's property. In January of 1985, DesRochers moved to Green Bay, Wisconsin. He lived and worked in Green Bay until he was laid off from his job and moved back to Baraga County in January of 1987.

Upon arriving back in the area DesRochers stayed with his father for several days. Thereafter he stayed several days a week with his father and spent the rest of his nights at various friends' homes. DesRochers testified that it was never his intention to remain in Baraga County. He intended to stay only until he was called back to work in Green Bay. He testified that it was not his intention to reside permanently or indefinitely with his father. He had brought only his clothes with him from Green Bay and had left his other possessions there.

DesRochers testified that when he slept at his father's he did not have a room but slept on the couch. He did not have a dresser for his possessions nor did he have a key to the house. He received no financial support from his father but

was allowed to do his laundry and eat whatever food was available in the house when he was there. DesRochers received mail at his father's home and had directed that his unemployment checks be sent there. He also listed his father's address as his own when he applied for a bank loan in February of 1987. Shortly after the automobile accident DesRochers was arrested and he listed his father's address as his residence.

After reviewing the evidence, we cannot say that the trial court clearly erred in finding DesRochers was domiciled with his father at the time of the accident. While much of the subjective evidence supports USF&G's claim of no domicile, all of the objective evidence, DesRochers' mailing address and designation on the bank loan, supports the proposition that he was domiciled at his father's home. It is apparent to us that DesRochers, at the time of the accident, would not have considered himself to be without a home. Instead it appears as though he considered himself to officially reside at his father's home but that he could sleep wherever he chose on any given night. We recognize that the facts of this case may not fall neatly within the factors as enunciated in *Workman, supra,* and *Dairyland, supra.* However, we must take into consideration the realities of young adulthood which may involve differing degrees of separation from the parental home. Accordingly, we affirm the decision of the trial court finding that DesRochers was domiciled in his father's home at the time of the accident.

Reversed in part; affirmed in part.