BORGESS MEDICAL CENTER v RESTO

Docket No. 270773. Submitted November 7, 2006, at Grand Rapids. Decided January 9, 2007, at 9:05 a.m. Leave to appeal sought.

Borgess Medical Center brought an action in the Allegan Circuit Court against Juan Resto and Southern Michigan Insurance Company, alleging that it had provided medical care and treatment to Resto following an automobile accident. With respect to Southern Michigan, the plaintiff sought personal protection insurance (PPI) benefits, alleging that Resto did not have no-fault insurance of his own or available to him, that Southern Michigan insured the owner of the vehicle (who was not the driver, however), and that Southern Michigan had unreasonably refused to pay or delayed paying no-fault benefits. The court, George R. Corsiglia, J., granted partial summary disposition for the plaintiff on the liability issue, concluding that there was no dispute that Southern Michigan insured the vehicle. The court rejected Southern Michigan's argument that the plaintiff had the burden of proving that Resto, who could not be located, had no other insurance available to him. The court also concluded, however, that the plaintiff had presented insufficient evidence regarding whether its charges for medical care and treatment were reasonable and reasonably necessary, as required by MCL 500.3107(1)(a). Nonetheless, the court held that the plaintiff would be entitled to interest and penalty interest on whatever charges it did establish were reasonable and reasonably necessary, and to attorney fees. The plaintiff again moved for summary disposition, providing additional affidavits concerning its charges for services. The court entered a judgment for the plaintiff, which included the benefits sought, interest, penalty interest under MCL 500.3142, and attorney fees under MCL 500.3148. Southern Michigan appealed.

The Court of Appeals *held*:

1. The trial court did not err by granting the plaintiff summary disposition. Because the plaintiff is a health-care provider rather than a person injured in a motor vehicle accident, MCL 500.3114, which concerns the priority of no-fault insurers against which claims for PPI benefits should be made, does not require a no-fault claimant like the plaintiff to prove priority among insurers, nor

does it require the plaintiff to prove that no higher-priority insurer exists. The plaintiff is entitled to bring an action for all reasonable charges for reasonably necessary products, services, and accommodations for the care, recovery, or rehabilitation of a person whose injury arose out of the ownership, operation, maintenance, or use of a motor vehicle. An insurer may not delay or deny paying an otherwise proper claim to first litigate a question of priority among insurers, especially in a case such as this, in which Southern Michigan's defense involved only a hypothetical higher-priority insurer.

2. The trial court did not err by denying Southern Michigan's cross-motion for summary disposition. While the trial court initially determined that the plaintiff had not proved that its charges were reasonable and reasonably necessary, Southern Michigan did not show that the plaintiff's charges were unreasonable or not reasonably necessary. Thus, Southern Michigan failed to show that it was entitled to judgment as a matter of law.

3. The trial court did not clearly err by awarding the plaintiff penalty interest under MCL 500.3142. PPI benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and amount of the loss. A trial court must assess penalty interest against a no-fault insurer if the insurer refuses to pay and is determined to be liable for the benefits, notwithstanding the insurer's good faith in not promptly paying. Contrary to Southern Michigan's assertion, the 30-day period did not begin running after the plaintiff supplied its affidavits for the second summary disposition motion.

4. The trial court did not clearly err by awarding the plaintiff attorney fees. Before a court may assess attorney fees against an insurer under MCL 500.3148(1), the court must find that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. An insurer does not unreasonably refuse to pay or unreasonably delay the payment of PPI benefits when it does so because of a legitimate question of statutory construction or constitutional law or a bona fide factual uncertainty. If benefits are overdue under MCL 500.3142(2), however, a rebuttable presumption of unreasonable refusal or undue delay arises. No bona fide factual dispute existed in this case. Southern Michigan's sole basis for denying the plaintiff's claim was its argument that the plaintiff had not proved that Southern Michigan was the highest-priority insurer.

5. The trial court did not abuse its discretion in determining the amount of attorney fees. The trial court must award a reasonable fee. In determining what is reasonable for purposes of

MCL 500.3148, a trial court should consider, but is not limited to considering, (1) the attorney's professional standing and experience, (2) the skill, time, and labor involved, (3) the amount in question and the results achieved, (4) the difficulty of the case, (5) the expenses incurred, and (6) the nature and length of the professional relationship with the client. The trial court determined an hourly rate of compensation within the range of hourly rates reported in a State Bar of Michigan survey that the plaintiff submitted.

6. The trial court did not abuse its discretion by granting the plaintiff's motion to compel discovery and awarding the plaintiff reasonable attorney fees under MCR 2.313 for Southern Michigan's failure to respond properly to the plaintiff's interrogatories and requests for admission.

Affirmed.

WHITE, J., concurring, wrote separately to state that she did not rely on a statutory distinction between a "person suffering accidental bodily injury" and a claimant under MCL 500.3114(4). Southern Michigan indisputably insured the vehicle's owner, and no higher-priority insurer was identified.

1. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — PRIORITY OF INSURERS — HEALTH-CARE PROVIDERS.

A health-care provider that has furnished reasonably necessary products, services, and accommodations for the care, recovery, or rehabilitation of an injured person entitled to no-fault insurance benefits need not prove as part of its prima facie case against a legally liable no-fault insurer the absence of another insurer standing in a higher priority (MCL 500.3105[1], 500.3107[1][a], 500.3114[4]).

2. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — PENALTY INTEREST.

A court must assess penalty interest against a no-fault insurer that is liable for personal protection insurance benefits and refused to pay the benefits within 30 days after receiving reasonable proof of the fact and amount of the loss sustained, notwithstanding the insurer's good faith in not promptly paying the benefits (MCL 500.3142[2], [3]).

3. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — ATTORNEY FEES.

A court may not award attorney fees to a claimant of personal protection insurance benefits unless the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper

payment; an insurer does not unreasonably refuse to pay or unreasonably delay the payment of benefits when it does so because of a legitimate question of statutory construction or constitutional law or a bona fide factual uncertainty; a rebuttable presumption of unreasonable refusal or undue delay arises when benefits are overdue (MCL 500.3142[2], 500.3148[1]).

4. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — ATTORNEY FEES.

A court awarding attorney fees for an insurer's unreasonable refusal to pay or unreasonable delay in paying personal protection insurance benefits must award only a reasonable fee; in determining what is a reasonable fee, the court shall consider, but is not limited to considering, (1) the attorney's professional standing and experience, (2) the skill, time, and labor involved, (3) the amount in question and the results achieved, (4) the difficulty of the case, (5) the expenses incurred, and (6) the nature and the length of the professional relationship with the client; a court need not make detailed findings regarding each factor it considers (MCL 500.3148[1]).

*Miller Johnson* (by *Stephen R. Ryan* and *Richard E. Hillary, II*) for Borgess Medical Center.

*Lupo & Koczkur, P.C.* (by *Mark T. Rajt, Scott J. Lupo*, and *Kenneth L. Lupo*), for Southern Michigan Insurance Company.

Before: O'CONNELL, P.J., and WHITE and MARKEY, JJ.

PER CURIAM. Defendant appeals by right the trial court's judgment awarding plaintiff no-fault benefits, penalty interest, and attorney fees after granting plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10). Defendant also appeals the trial court's granting of plaintiff's motion to compel discovery and the imposition of sanctions. We affirm.

I

Plaintiff brought this action to recover no-fault benefits from defendant, Southern Michigan Insurance

Company, after providing medical treatment to Juan Resto for injuries he received in a January 23, 2004, automobile accident. According to an Allegan County Sheriff's Department accident report, Resto was injured while a passenger in a 1993 GMC van operated by Tomas Lucas-Diaz and owned by Francisco Lopez, whom defendant insured. The accident report indicated that Lucas-Diaz was driving the van south on US-131 when he lost control, slid into the median, and rolled over. The police report records the injuries of persons involved in the accident on a scale in descending order of severity from K (which apparently stands for "killed"), to A, B, C, and finally 0 (which apparently indicates no injury). The report indicated that Resto received level-A injuries in the accident and was transported by ambulance to "Borgess" for treatment.

Plaintiff filed its complaint for personal injury protection (PIP) benefits on August 9, 2004, alleging that it provided emergency medical care and inpatient medical care and treatment to Resto on January 23 and 24, 2004, as well as outpatient services on February 5, 2004, with Resto incurring charges totaling $12,402. Plaintiff attached to its complaint the affidavit of Linda Collins, its director of patient financial services, who averred that plaintiff provided medical services to Resto as stated in the complaint and in attached itemized statements. Collins also averred that plaintiff "provided a UB-92[1] and itemized statement for the care and treatment provided to Juan Resto, to [defendant] on April 19, 2004." Plaintiff also alleged in its complaint that the services it provided to Resto were medically necessary and that the charges for the services were commercially reasonable.

---

[1] Apparently a standard medical billing form.

With respect to its direct claim against defendant, plaintiff alleged that defendant provided no-fault insurance to Francisco Lopez on the date of the accident and that Resto did not have no-fault insurance of his own or available to him as a resident relative of another. Plaintiff further alleged that defendant had unreasonably refused to pay or delayed paying plaintiff no-fault benefits. Thus, plaintiff alleged that it was entitled to penalty interest under MCL 500.3142 and attorney fees under MCL 500.3148.

Defendant filed its answer on September 3, 2004, neither admitting nor denying most of plaintiff's allegations, professing a lack of present knowledge. But defendant admitted that it had received plaintiff's itemized statements of care and treatment provided to Resto and a UB-92. Defendant claimed lack of knowledge to either admit or deny that the services plaintiff provided Resto were medically necessary. Defendant denied as untrue that plaintiff's charges were customary and commercially reasonable, but also claimed to lack present knowledge to be able to either admit or deny whether plaintiff's claim of $12,402 consisted of "customary charges for like professional medical services . . . [that] are commercially reasonable." Defendant admitted that it provided no-fault coverage to Francisco Lopez on the date of the accident and that it had refused and still refused to pay no-fault benefits. As became apparent during discovery, the crux of Southern Michigan's defense was that after Resto's release from treatment, neither plaintiff nor defendant could locate him to verify that he had no other available insurance.

On May 27, 2005, plaintiff moved for summary disposition under MCR 2.116(C)(10). Plaintiff contended that the facts establishing defendant's liability for the charges incurred in treating Resto were undis-

puted: Resto was injured in an automobile accident while a passenger in a vehicle owned by Lopez and insured by defendant. Plaintiff asserted that it had provided defendant with its itemized statement, UB-92s, and the affidavit of its financial director attesting to the fact and amount of the loss sustained. According to plaintiff, defendant's assertion that a hypothetical insurer might exist with a higher priority for paying plaintiff's claim was not a viable defense, and, therefore, plaintiff was entitled to judgment as matter of law.

Defendant responded by asserting that Resto, and therefore plaintiff, had the burden of proving that he had no other insurance of his own or available to him as a resident in the home of a relative who had insurance. Defendant asserted "the burden is upon a party claiming no fault benefits to establish that the orders of priority set forth in MCL 500.3114 have been satisfied." Defendant also asserted that plaintiff had not met its burden of proof that the charges were medically necessary and reasonable. Specifically, defendant argued that although defendant's affidavit had established that its charges were customary, they were not necessarily reasonable. See *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005). Thus, defendant argued that not only should plaintiff's motion for summary disposition be denied, defendant should be granted summary disposition under MCR 2.116(I)(2) instead.

The trial court ruled there was no dispute that defendant insured the vehicle in which Resto was a passenger when injured. Further, there was no evidence of any other insurance available to Resto, and the court rejected as unreasonable defendant's argument that

plaintiff was required to prove a negative. The court noted that plaintiff made a reasonable inquiry whether other insurance was available; therefore, defendant has primary liability for no-fault benefits. Further, the court noted that defendant could seek reimbursement if another higher-priority carrier were subsequently identified. The trial court stated that defendant's interpretation of the no-fault act "doesn't even make sense" and "would defeat the purpose" of the act. Accordingly, the trial court ruled that plaintiff had met its burden of proof regarding defendant's liability. But the court found plaintiff's evidence lacking with respect to whether its charges were reasonable and reasonably necessary. Nevertheless, the court ruled that plaintiff would be entitled to interest and penalty interest on whatever charges plaintiff established were reasonable and reasonably necessary. The court also ruled that plaintiff would be entitled to attorney fees because defendant could not simply ignore plaintiff's claim on the basis that another carrier might be responsible. Consequently, the trial court granted partial summary disposition to plaintiff and denied defendant's motion for summary disposition pursuant to MCR 2.116(I)(2).

Plaintiff subsequently moved again for summary disposition with additional affidavits attesting that the services provided to Resto were medically necessary and that the charges were reasonable. Dr. William J. Behrje averred that all the products and services plaintiff provided Resto "were not only medically necessary, but they were essential to Mr. Resto's care, recovery, and rehabilitation for the injuries that he received as a result of his January 23, 2004, motor vehicle accident." Carol Lindauer, plaintiff's manager of patient financial services, expanded on Collins's prior affidavit. Specifically, Lindauer averred that all of plaintiff's charges were established after considering its costs, its nominal

return, and regional and national comparisons of similarly situated and sized health-care providers. Lindauer asserted that all of plaintiff's charges were reasonable in light of the factors it considered in setting them and that plaintiff would charge the same amount with or without insurance coverage.

In its brief responding to plaintiff's second motion for summary disposition, defendant asserted that, on the basis of Dr. Behrje's affidavit, it no longer disputed that plaintiff's "treatment [of] Mr. Resto was reasonably necessary for his care, recovery, and/or rehabilitation as a result of injuries sustained in the motor vehicle accident . . . ." Defendant only contested the imposition of penalty interest and attorney fees.

At the hearing on the motion, defendant argued that because plaintiff did not establish that its charges were reasonably necessary and reasonable until its second motion for summary disposition, the charges were not "overdue" until 30 days after that motion. The trial court disagreed with defendant's interpretation of MCL 500.3142(2) and asked defense counsel what was deficient about the information plaintiff initially provided to defendant. Defense counsel could not answer the court's question. The trial court ruled that it would not change its prior determination that penalty interest would accrue from 30 days after plaintiff provided defendant with its billing materials. The court observed that defendant had never indicated what it considered reasonable and necessary, which the court found to be unreasonable. Further, the court determined that because defendant had required plaintiff to "go though so many hoops," plaintiff had incurred "extraordinary and extremely expensive attorney fees." The court also found that plaintiff had never asked defendant for anything more than that to which it was entitled.

Accordingly, the trial court granted judgment for plaintiff, awarded penalty interest as previously determined, and ruled that the attorney fees requested by plaintiff's counsel were both reasonable and necessary. The trial court entered judgment for plaintiff in the amount of $12,402, penalty interest of $2,909.04 under MCL 500.3142, interest of $1,029.10 under MCL 600.6013, and attorney fees of $18,687.50 under MCL 500.3148. Defendant appeals by right.

II

We review de novo a trial court's decision to grant or deny summary disposition to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Under MCR 2.116(C)(10), the motion tests the factual support for a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3)(b); *Maiden, supra* at 120. A court properly grants the motion when the proffered evidence, viewed in the light most favorable to the nonmoving party, fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Defendant also raises issues of statutory interpretation, which we review de novo. *Amerisure Ins Co v Auto-Owners Ins Co*, 262 Mich App 10, 14; 684 NW2d 391 (2004). The Court's primary task when interpreting a statute is to ascertain and give effect to the intent of the Legislature. *Id.*; *Niles Twp v Berrien Co Bd of Comm'rs*, 261 Mich App 308, 313; 683 NW2d 148 (2004). Our Supreme Court stated principles of statutory construction in *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002):

An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature. To do so, we begin with an examination of the language of the statute. If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written. A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [Citations omitted.]

In applying these principles, this Court must "consider both the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.' " *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999), quoting *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995). Also, this Court must accord meaning, as far as possible, to every phrase, clause, and word in the statute. *Sun Valley, supra* at 237; *Shinholster v Annapolis Hosp*, 471 Mich 540, 549; 685 NW2d 275 (2004). In sum, the fair and natural import of the terms employed in the statute, in view of the subject matter of the statute, governs. *Van Reken v Darden, Neef & Heitsch*, 259 Mich App 454, 457; 674 NW2d 731 (2003).

III

Defendant first argues that the trial court erred by granting plaintiff, rather than it, summary disposition. Defendant argues that plaintiff, in asserting its no-fault claim, stands in the shoes of Resto. Further, defendant argues that MCL 500.3114(4) requires Resto to show that a higher-priority no-fault insurer was unavailable to provide no-fault benefits. In the alternative, defendant argues that when the trial court denied plaintiff's first motion, it should have granted defendant's cross-

motion for summary disposition because the motion hearing was the procedural equivalent of a trial and plaintiff should not have been permitted a "second bite of the apple." We disagree.

Defendant's main argument rests on its contention that MCL 500.3114 required plaintiff to establish as a prima facie element of its case that no other no-fault insurance was available to Resto. Defendant's argument is based on the faulty premise that plaintiff stands in the shoes of Resto when seeking compensation for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). Defendant cites *Lakeland Neurocare Ctrs v State Farm Mut Automobile Ins Co*, 250 Mich App 35; 645 NW2d 59 (2002), for its stands-in-the-shoes premise. But *Lakeland* held that a party providing benefits to an injured person entitled to no-fault benefits may make a direct claim against a no-fault insurer. *Id.* at 38-41. The *Lakeland* Court based its holding on the language of the statutory provisions involved, not on the premise that a health-care provider stands in the shoes of the person injured in an automobile accident. The Court reasoned that MCL 500.3112 contemplates the payment of PIP benefits to someone other than the injured person and that a provider of health care to a person injured in an automobile accident is a no-fault "claimant" entitled to seek penalty interest for overdue benefits, MCL 500.3142, and attorney fees for unreasonably denied clams, MCL 500.3148(1). *Lakeland, supra* at 39-41. The logical implication of *Lakeland* is that a health-care provider like plaintiff that has furnished "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," MCL 500.3107(1)(a), has an independent cause of action against a no-fault carrier liable to

provide no-fault benefits to the injured person, MCL 500.3105.[2]

Defendant argues that plaintiff must prove that no higher-priority no-fault insurer exists under MCL 500.3114. We find that defendant's interpretation of MCL 500.3114 is contrary to its plain language. Specifically, defendant relies on subsections 1 and 4 of MCL 500.3114, which read in pertinent part:

> (1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. . . .

\* \* \*

> (4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor

---

[2] We recognize that this Court's recent decision in *Hatcher v State Farm Mut Automobile Ins Co*, 269 Mich App 596, 599-600; 712 NW2d 744 (2006), could be read to cast doubt on this conclusion. That case held that a mother did not have an independent cause of action for attendant care benefits provided to her daughter injured in an automobile accident, citing *Geiger v Detroit Automobile Inter-Ins Exch*, 114 Mich App 283, 287-288; 318 NW2d 833 (1982), overruled in part *Cameron v Auto Club Ins Assoc*, 476 Mich 55 (2006). *Hatcher* is distinguishable from the circumstances in the instant case. The legal issue in *Hatcher* was whether the mother timely brought her claim in light of the one-year back rule of MCL 500.3145(1) and the minority tolling provision of MCL 600.5851. Because the *Hatcher* Court held that one-year-back rule barred the claim, whether the claim belonged to the mother or her injured minor daughter was immaterial. Therefore, the Court's conclusion in *Hatcher, supra* at 600, that MCL 500.3112 "confers a cause of action on the injured party and does not create an independent cause of action for the party who is legally responsible for the injured party's expenses" is dicta. Moreover, plaintiff in this case does not base its claim on being legally responsible for the injured person's expenses, but on having provided "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," MCL 500.3107(1)(a), for which defendant is legally liable.

vehicle accident while an occupant of a motor vehicle shall
claim personal protection insurance benefits from insurers
in the following order of priority:

    (a) The insurer of the owner or registrant of the vehicle
occupied.

    (b) The insurer of the operator of the vehicle occupied.

Defendant argues that plaintiff must disprove, as a
part of its prima facie case, that the general rule stated
in subsection 1, as incorporated by subsection 4, does
not apply. Subsection 1 states the general rule of
priority among no-fault insurers. MCL 500.3114(1);
*Belcher v Aetna Cas & Surety Co*, 409 Mich 231, 240;
293 NW2d 594 (1980). Thus, "generally an injured
person is required to seek compensation from his own
no-fault insurer, regardless of whether that person's
insured vehicle is involved in the accident." *Farmers Ins
Exch v AAA of Michigan*, 256 Mich App 691, 695; 671
NW2d 89 (2003). But MCL 500.3114(4), on which
defendant heavily relies as the starting point of its
argument, does not refer to a claimant such as plaintiff.
Instead, subsection 4 plainly refers to, "a *person suffer-
ing accidental bodily injury* arising from a motor ve-
hicle accident while an occupant of a motor vehicle *shall
claim* personal protection insurance benefits from in-
surers in the following order of priority . . . ." *Id.* (em-
phasis added). Because plaintiff is a health-care pro-
vider and not a person injured in a motor vehicle
accident, MCL 500.3114 does not by its plain language
require a no-fault claimant like plaintiff to prove prior-
ity among no-fault insurers.

Rather, plaintiff's entitlement to PIP benefits is
determined by MCL 500.3105(1), which provides that
"an insurer is liable to pay benefits for accidental bodily
injury arising out of the ownership, operation, mainte-
nance or use of a motor vehicle as a motor vehicle," as

defined in the no-fault act. See *State Farm Mut Automobile Ins Co v Wyant*, 154 Mich App 745, 747-748; 398 NW2d 517 (1986), citing *Lee v Detroit Automobile Inter-Ins Exch*, 412 Mich 505, 512-513; 315 NW2d 413 (1982). Thus, plaintiff may bring an action for "all reasonable charges" when it has provided "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a); see, also, *Lakeland, supra* at 38-41. Plaintiff's "right to recover is dependent only on whether the injury arises out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, as the term 'motor vehicle' is defined in MCL 500.3101(2)(c)[.]" *State Farm, supra* 747-748; see, also, MCL 500.3105(1). Nowhere in MCL 500.3114 or anywhere else in the no-fault act has the Legislature required a health-care provider such as plaintiff to prove that it has submitted its claim to, or brought suit against, the no-fault insurer having the highest priority to pay its claim. Principles of statutory construction preclude this Court from reading into an unambiguous statute that which is not clearly manifested by the words of the statute itself. *Roberts, supra* at 63.

Moreover, defendant's interpretation of the statute is contrary to the purposes the no-fault act and inconsistent with settled caselaw. "Michigan's no-fault insurance system aims to provide victims of automobile-related accidents with assured, adequate, and prompt payment for economic losses." *Miller v Farm Bureau Mut Ins Co*, 218 Mich App 221, 225; 553 NW2d 371 (1996). Indeed, the general rule that an injured person must look first to his own insurance furthers this purpose. *Farmers Ins Exch, supra* at 695-696. But the well-settled caselaw in this state holds that an insurer may not delay or deny paying an otherwise proper claim

in order to first litigate a question of priority among insurers because to do so would frustrate the purposes of the statute.

Here, although defendant did not dispute that it provided coverage for the accident, defendant denied plaintiff's claim for no-fault benefits only because another carrier with a higher priority to pay the claim *might* exist. Michigan caselaw rejects such a defense as a reason to delay paying a no-fault claim. See *Bach v State Farm Mut Automobile Ins Co*, 137 Mich App 128, 132; 357 NW2d 325 (1984) (holding that to delay paying a claim to decide the question of which of two insurers was legally responsible would defeat the purpose of the statutes imposing penalty interest and attorney fees), *Darnell v Auto-Owners Ins Co*, 142 Mich App 1, 12; 369 NW2d 243 (1985) ("Problems of priority among insurers should not cause delay in payment of benefits to which the claimant is entitled."), and *Bloemsma v Auto Club Ins Co*, 174 Mich App 692, 697; 436 NW2d 442 (1989) ("A dispute of priority among insurers will not excuse the delay in making timely payment.").

The no-fault act is intended to provide prompt compensation to persons injured in automobile accidents without regard to fault. We conclude that subjecting medical providers like plaintiff to protracted coverage and priority litigation would frustrate the core purpose of the no-fault act. See *Cannell v Riverside Ins Co*, 147 Mich App 699, 706; 383 NW2d 89 (1985), quoting *Kalin v Detroit Automobile Inter-Ins Exch*, 112 Mich App 497, 510; 316 NW2d 467 (1982) (" 'A claimant who is clearly entitled to no-fault benefits should not be forced to hire an attorney merely because the circumstances of his accident create problems of priority among insurers.' ") Here there was no bona fide dispute that Resto was injured in an accident while a passenger in a motor

vehicle whose owner defendant insured with a no-fault policy. Thus, Resto was entitled to no-fault benefits. Under existing caselaw, defendant may not assert a real priority dispute as a defense. Certainly, it follows that defendant may not assert a hypothetical priority dispute as a defense.

We find specious defendant's contention that it was not asserting a priority defense. Defendant asserted a priority defense by arguing that plaintiff must prove a negative: that no higher-priority insurer was available to pay plaintiff's claim. As discussed earlier, the no-fault act contains no such requirement. The record here is clear. Defendant admitted that the only reason it refused to pay plaintiff's no-fault claim was the mere possibility another insurer might have a higher priority to pay the claim. That another no-fault insurer was not identified does not change the fact that defendant was asserting the mere possibility of a priority dispute as its sole defense to paying plaintiff's claim. Because defendant could not assert a real priority dispute as a defense, it could not assert the mere possibility of a priority dispute as a defense.

Defendant also misplaces reliance on M Civ JI 35.02, which provides:

> In order for the plaintiff to recover no-fault benefits from the defendant, the plaintiff has the burden of proof on each of the following:
>
> a. *(that at the time of the accident there existed a valid contract of no-fault insurance between [name of insured] and defendant)[.]
>
> * * *
>
> *Note on Use*
>
> *Delete where not an issue. If an issue, the Court should determine what contractual relationship must be proved under MCL 500.3114, .3115.

This instruction simply does not apply under the circumstances of this case because defendant admitted that it insured Francisco Lopez, the owner of the accident vehicle.

Defendant's alternative argument also lacks merit. A provider of medical services to a person injured in an automobile accident that submits a no-fault claim bears the burden of proving that its charges were both reasonable and reasonably necessary for the injured person's care, recovery, or rehabilitation. MCL 500.3107(1)(a); MCL 500.3157; *Williams v AAA Michigan*, 250 Mich App 249, 258; 646 NW2d 476 (2002). At the initial hearing on plaintiff's motion for summary disposition, the trial court ruled that plaintiff had failed to produce evidence that its charges were reasonable and reasonably necessary for Resto's care, recovery, or rehabilitation. Defendant argues that, on the basis of this ruling, the trial court should have granted defendant's cross-motion for summary disposition. But defendant admitted that it did not investigate whether plaintiff's charges were necessary or reasonable, and therefore produced no evidence that plaintiff's charges were unreasonable or not reasonably necessary. Accordingly, defendant failed to show that it was entitled to judgment as matter of law, and the trial court properly denied defendant's cross-motion for summary disposition.

At the second hearing on plaintiff's motion, plaintiff produced additional affidavits attesting that its charges with respect to Resto were both reasonable and reasonably necessary for Resto's care, recovery, or rehabilitation. Defendant no longer disputed this issue and, as discussed earlier, failed to present a legally viable defense. Consequently, the trial court properly granted plaintiff's motion for summary disposition because, on

the basis of the undisputed facts, plaintiff was entitled to judgment as a matter of law.

IV

Defendant next argues that the trial court clearly erred by awarding penalty interest pursuant to MCL 500.3142 because payment of the benefit was not "overdue" until 30 days after plaintiff, at its second motion for summary disposition, supplied an affidavit attesting that the care plaintiff provided Resto was reasonably necessary. Likewise, defendant contends that the trial court erred by awarding attorney fees under MCL 500.3148(1) for the same reason. Defendant cites for this argument by analogy *Proudfoot v State Farm Mut Ins Co,* 469 Mich 476, 485; 673 NW2d 739 (2003), holding that attorney fees could not be awarded under MCL 500.3148(1) because the benefits were not overdue when the charges had not yet been incurred. Finally, defendant asserts that the trial court based its award of attorney fees on an unreasonable hourly rate. We find all these arguments without merit.

We review a trial court's award of penalty interest under MCL 500.3142 for clear error. *Williams, supra* at 265. Likewise, we review for clear error a trial court's factual findings regarding awarding attorney fees under MCL 500.3148. MCR 2.613(C); *Attard v Citizens Ins Co of America,* 237 Mich App 311, 316-317; 602 NW2d 633 (1999). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake occurred." *Amerisure Ins Co, supra* at 24. If the trial court determines that an award of attorney fees is proper, the amount of the attorney fees must be reasonable. *Wood v Detroit Automobile Inter-Ins Exch,* 413 Mich 573, 587-588; 321 NW2d 653 (1982). Appellate review of the trial court's determination is for an abuse of discretion. *Id.*

The trial court did not clearly err by awarding plaintiff penalty interest pursuant to MCL 500.3142. Further, the trial court neither clearly erred nor abused its discretion by awarding plaintiff attorney fees under MCL 500.3148(1).

With respect to penalty interest, MCL 500.3142 provides in relevant part:

> (1) Personal protection insurance benefits are payable as loss accrues.
>
> (2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. . . .
>
> (3) An overdue payment bears simple interest at the rate of 12% per annum.

With respect to attorney fees, MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

Before either penalty interest or attorney fees may be awarded to a claimant, PIP benefits must be overdue. First, to be overdue, allowable expenses must actually have been incurred. MCL 500.3142(1); *Proudfoot, supra* at 485. Second, PIP "benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Before attorney fees may be assessed against an insurer, the trial court must additionally find "that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

MCL 500.3148(1). If benefits are "overdue" within the meaning of MCL 500.3142(2), "a rebuttable presumption of unreasonable refusal or undue delay arises." *Combs v Commercial Carriers, Inc,* 117 Mich App 67, 73; 323 NW2d 596 (1982); see, also, *McKelvie v Auto Club Ins Ass'n,* 203 Mich App 331, 335; 512 NW2d 74 (1994).

But the element of reasonableness does not apply to the conduct of the insurance company when awarding penalty interest under MCL 500.3142. The reasonableness of the insurer's actions or the insurer's good faith in not timely paying benefits is irrelevant. The trial court must assess penalty interest against a no-fault insurer if the insurer refuses to pay benefits after receiving reasonable proof of loss and it is later determined to be liable, notwithstanding the insurer's good faith in not promptly paying the benefits. See *Williams, supra* at 265, and *Davis v Citizens Ins Co of America,* 195 Mich App 323, 328; 489 NW2d 214 (1992). This Court explained in *Univ of Michigan Regents v State Farm Mut Ins Co,* 250 Mich App 719, 735; 650 NW2d 129 (2002):

> No-fault interest is awarded as a penalty for the insurer's misconduct and is not intended to compensate the insured for damages. To recover interest, a plaintiff is not required to prove that the defendant acted arbitrarily or unreasonably delayed in payment of benefits. Instead, the statute "only requires that the insured present the insurer with reasonable proof of loss. If the insurer does not pay the claim within 30 days after receiving this proof, it becomes liable for interest." [Citations omitted.]

Defendant's argument that a claimant must provide sufficient proof to prevail on a motion for summary disposition before the statutory 30-day period begins to run is without merit. A claimant attempting to sue an insurer for no-fault benefits bears the burden of prov-

ing that allowable expenses were both reasonable and necessary. MCL 500.3107(1)(a); *SPECT Imaging, Inc v Allstate Ins Co*, 246 Mich App 568, 574-575; 633 NW2d 461 (2001). But obtaining penalty interest pursuant to MCL 500.3142(2) only requires that a claimant provide an insurer "reasonable proof of the fact and of the amount of loss sustained." Once a claimant provides reasonable proof of the fact and amount of the loss, the insurer has a duty to conduct its own investigation into the reasonableness and necessity of the charges and ask for what it deems lacking. *Williams, supra* at 267.

Defendant never investigated the reasonableness or necessity of plaintiff's charges. Instead, defendant relied on its legal defense that a higher-priority no-fault insurer might be responsible for paying plaintiff's claim. Defendant acknowledged receipt of plaintiff's statements and UB-92s on February 25, March 25, and April 2, 2004. Defendant also received a copy of the police report regarding the accident and conducted its own investigation on March 17 and May 10, 2004, concerning whether Resto was eligible for PIP benefits. Given this record, the trial court did not clearly err in finding that benefits were overdue as of May 29, 2004. Therefore, plaintiff was entitled to penalty interest under MCL 500.3142.

The proof plaintiff provided defendant in this case is similar to that which this Court determined to be reasonable proof of the fact and amount of the loss in *Williams*. In that case, the claimant provided the no-fault insurer a letter and statement from a health-care provider. *Williams, supra* at 265-266. This Court held that the claimant had provided the no-fault insurer reasonable proof of the fact and amount of the loss. *Id.* at 267.

Even though benefits were overdue, a trial court may not award attorney fees to a claimant unless "the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). An insurer does not unreasonably refuse to pay or delay payment of benefits when it does so because of a legitimate question of statutory construction or constitutional law or a bona fide factual uncertainty. *McKelvie, supra* at 335; *Liddell v Detroit Automobile Inter-Ins Exch,* 102 Mich App 636, 650; 302 NW2d 260 (1981). But when benefits are overdue within the meaning of MCL 500.3142(2), a rebuttable presumption of unreasonableness arises and the insurer has the burden to justify its refusal or delay in paying. *McKelvie, supra* at 335; *Combs, supra* at 73.

Defendant never created a bona fide factual dispute that plaintiff's charges were unnecessary or unreasonable. Defendant admitted that its sole basis for denying plaintiff's claim was that plaintiff had not proved that defendant was the highest-priority insurer under the no-fault act. But, under settled caselaw, a priority dispute among no-fault insurers will not justify delay in paying a no-fault claim. *Darnell, supra* at 12; *Bach, supra* at 132. "A dispute of priority among insurers will not excuse the delay in making timely payment." *Bloemsma, supra* at 697. Thus, "when the only question is which of two insurers will pay, it is unreasonable for an insurer to refuse payment of benefits." *Univ of Michigan Regents, supra* at 737. Defendant may not avoid the application of this principle by claiming that its speculation that a higher-priority insurer might exist was not a priority dispute. Defendant's denial of no-fault benefits was unreasonable. The trial court did not clearly err by awarding plaintiff attorney fees under MCL 500.3148(1).

Finally, defendant has failed to establish that the trial court abused its discretion in determining the amount of attorney fees to award. When a trial court determines that an award of attorney fees under MCL 500.3148 is appropriate, the court must only award a reasonable fee. The statute does not define "reasonable" for purposes of awarding attorney fees. In *Liddell*, *supra* at 651-652, this Court adopted the guidelines stated in *Crawley v Schick*, 48 Mich App 728, 737; 211 NW2d 217 (1973):

> There is no precise formula for computing the reasonableness of an attorney's fee. However, among the facts to be taken into consideration in determining the reasonableness of a fee include, but are not limited to, the following: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

Likewise, our Supreme Court adopted the *Crawley* factors for the purpose of determining reasonable attorney fees under MCL 500.3148 in *Wood*. The *Wood* Court observed that although "a trial court should consider the guidelines of *Crawley*, it is not limited to those factors in making its determination." *Wood, supra* at 588. Furthermore, a trial court need not make detailed findings regarding each factor the court considers. *Id*. The trial court's award "will be upheld unless it appears upon appellate review that the trial court's finding on the 'reasonableness' issue was an abuse of discretion." *Id*.

Defendant asserts only two reasons the trial court's determination of the amount of attorney fees was an abuse of discretion. First, defendant argues that no-fault benefits were not overdue for reasons that we have already discussed and rejected. Second, defendant ar-

gues that the trial court overvalued the hourly rate of plaintiff's attorneys. Defendant relies on a graph in a Michigan Bar Journal article, selecting values reported for equity partners below the 25th percentile, for senior associates probably in the lowest tenth percentile, and for associates at the very bottom of reported hourly rates. Stiffman, *A snapshot of the economic status of attorneys in Michigan: Excerpts from the 2003 Economics of Law Practice Survey,* 82 Mich B J 20 (November 2003). On the other hand, plaintiff submitted to the trial court the more detailed 2003 State Bar of Michigan Economics of Law Practice Survey and argued that the hourly rates counsel used in this case to calculate attorney fees were commensurate with the rates charged by attorneys with comparable experience who are engaged in trial practice and who practice in firms of comparable size. A review of the data on which plaintiff and defendant rely indicates the trial court determined an hourly rate of compensation within the range of reported hourly rates in the bar journal survey. Consequently, defendant has failed to establish that the trial court abused its discretion in establishing the amount of attorney fees to award to plaintiff.

V

Finally, defendant argues that the trial court erred by granting plaintiff's motion to compel discovery, ordering sanctions against defendant, and denying defendant's request for attorney fees because plaintiff's motion was frivolous. We disagree.

We review for an abuse of discretion a trial court's rulings on a motion to compel discovery. *Cabrera v Ekema,* 265 Mich App 402, 406; 695 NW2d 78 (2005). Likewise, we review for an abuse of discretion a trial court's decision to impose sanctions for discovery viola-

tions. *Richardson v Ryder Truck Rental, Inc*, 213 Mich
App 447, 450; 540 NW2d 696 (1995). An abuse of
discretion occurs when the trial court's decision falls
outside the range of principled outcomes. *Maldonado v
Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809
(2006). We find that defendant has failed to establish
that the trial court abused its discretion by granting
plaintiff's motion to compel discovery and awarding
plaintiff its reasonable attorney fees.

Michigan's court rules "implement 'an open, broad
discovery policy . . . .' " *Cabrera, supra* at 406-407, quot-
ing *Reed Dairy Farm v Consumers Powers Co*, 227 Mich
App 614, 616; 576 NW2d 709 (1998). At the hearing on
plaintiff's motion to compel, defendant did not dispute
that it had not timely served answers to plaintiff's
interrogatories. MCR 2.309(B). The trial court re-
quested an explanation from defense counsel, who
responded, "I don't have an answer for that, your
Honor." Regarding plaintiff's requests for admissions,
defendant objected to most of the requests on the basis
of relevancy and defendant's lack of personal knowl-
edge to enable it to answer. Defendant even initially
failed to admit that it insured the owner of the vehicle
involved in the accident. Defendant's responses to
plaintiff's requests for admissions did not comply with
MCR 2.312(B)(2) and (3):

   (2) The answer must specifically deny the matter or
state in detail the reasons why the answering party cannot
truthfully admit or deny it. A denial must fairly meet the
substance of the request, and when good faith requires that
a party qualify an answer or deny only part of the matter of
which an admission is requested, the party must specify
the parts that are admitted and denied.

   (3) An answering party may not give lack of information
or knowledge as a reason for failure to admit or deny unless
the party states that he or she has made reasonable inquiry

and that the information known or readily obtainable is insufficient to enable the party to admit or deny.

At the hearing on plaintiff's motion, the trial court noted that in its prior experience with defense counsel's law firm, counsel had habitually disregarded the court rules. The trial court ordered defendant to answer plaintiff's requests for admissions and interrogatories, without objection, within 14 days. Further, the trial court awarded plaintiff $1,500 as a reasonable attorney fee because it found that defendant had provided "absolutely no excuse for why these [discovery requests] weren't answered in a timely manner and to make plaintiff proceed to file a motion and set it for hearing." This record fails to demonstrate an abuse of discretion by the trial court in finding that defendant's violations of the discovery rules were neither justified nor excused. Accordingly, the trial court did not abuse its discretion by awarding plaintiff its reasonable attorney fees incurred in bringing the motion. MCR 2.313(A)(5) and (D)(2).

VI

In summary, we find that the trial court properly granted plaintiff's motion for summary disposition and denied defendant's cross-motion. A health-care provider that has furnished "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," when the injured person is entitled to no-fault benefits, is not required by the no-fault act to prove as part of its prima facie case against a legally liable no-fault insurer the absence of another insurer standing in a higher priority than the one against which the claim is being made. We hold that defendant's interpretation of the statute to the contrary is inconsistent with the plain language of

the no-fault act, contrary to the purpose of the statute, and conflicts with well-established caselaw. In addition, the failure of one party to establish its entitlement to summary disposition under MCR 2.116(C)(10) does not thereby entitle the opposing party to judgment unless, under the undisputed facts, the opposing party is entitled to judgment as a matter of law.

We further hold that the trial court did not clearly err in awarding plaintiff penalty interest under MCL 500.3142, nor did the trial court either clearly err or abuse its discretion by awarding plaintiff attorney fees under MCL 500.3148(1). Also, defendant has not established that the trial court abused its discretion in setting the amount of reasonable attorney fees to award to plaintiff.

Last, defendant has not established that the trial court abused its discretion by granting plaintiff's motion to compel discovery and awarding plaintiff its reasonable attorney fees.

We affirm.

WHITE, J. (*concurring*). I write separately simply to state that I do not rely on a statutory distinction between "a person suffering accidental bodily injury" and a claimant under MCL 500.3114(4). Defendant indisputably insured the owner of the occupied vehicle, and no insurer in a higher priority was identified.